United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CARMEN CORTES,

Plaintiff(s),

v.

COUNTY OF SANTA CLARA,

Defendant(s).

_______________________________________/

CASE NO. 5:11-cv-03645 EJD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Docket Item No(s). 32]

In this action alleging employment discrimination and retaliation, presently before the court is Defendant County of Santa Clara's ("Defendant") Motion for Summary Judgment. See Docket Item No. 32. Plaintiff Carmen Cortes ("Plaintiff") has filed written opposition to the Motion.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Having carefully reviewed the relevant documents and evidence, the court has determined that Defendant's Motion is meritorious. It will therefore be granted for the reasons explained below.[1]

## I. FACTUAL BACKGROUND

### A. The Assessor's Office

Defendant maintains an Assessor's Office separated into five divisions, one of which is the Business Division. See Decl. of Cristina Torio ("Torio Decl."), Docket Item No. 34, at ¶ 4. The

[1] Plaintiff's request to postpone ruling on this Motion pursuant to Federal Rule of Civil Procedure 56(d) is DENIED because the court finds it both untimely - filed a month *after* the close of fact discovery - and unjustified. See Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009); Everson v. Leis, 556 F.3d 484, 493 (6th Cir. 2009).

United States District Court
For the Northern District of California

Business Division is responsible for "locating, valuing, and enrolling all taxable business personal property, including property such as computers, supplies, machinery, equipment, and fixtures" through a series of audits that are completed each year. Id. The Business Division is also responsible for processing business property statements, which need to be completed by June 30th each year. Id. at ¶ 5.[2]

The Assessor's Office employs three grades of auditors: senior auditor-appraisers, auditor-appraisers, and accountant auditor-appraisers. Id. at ¶ 7. Auditors at each level generally work independently and often travel within and out of California to investigate and complete assignments. Id.; Decl. of Dow W. Patten ("Patten Decl."), Docket Item No. 39, at Ex. B. At the beginning of each fiscal year, every auditor-appraiser is required to prepare an annual audit workplan setting forth "rolling" deadlines by which assigned audits will be completed. See Torio Decl., at ¶ 6. This is done to ensure that all audits are completed by June 30th. Id.

**B. Plaintiff is hired by the Assessor's Office**

Plaintiff is a Hispanic woman of Puerto Rican descent. Plaintiff was hired to work as an auditor-appraiser in the Business Division in June, 2005. Id. at ¶¶ 8, 9. By that time and according to her employment application, Plaintiff had earned a bachelor's degree in Accounting, was licensed as a certified public accountant, and had worked as an auditor/accountant at Deloitte & Touche, Tab Products Co., Integrated Technologies, Softbank, Solectron, NetFrame, Lasescope, and Hewlett-Packard. See Patten Decl., at Ex. A.

Plaintiff was initially assigned 42 audits to complete during the 2005 to 2006 fiscal year. See Torio Decl., at ¶ 10. For that fiscal year, the range of audits assigned to each auditor-appraiser at the beginning of the period was between 33 and 44 audits, with an average of 38 assigned audits per auditor. Id. By the end of the fiscal year, the range was between 27 and 44 audits with the same average. Id.

**C. Plaintiff is subjected to discipline**

Cristina Torio ("Torio") was Plaintiff's supervisor from January, 2006, through January,

[2] Plaintiff's evidentiary objections to the Torio Declaration are OVERRULED.

United States District Court
For the Northern District of California

2009. Id., at ¶ 9. Richard Leong ("Leong") was her supervisor from January, 2009, through August 2, 2010, after Torio was promoted to Assistant Chief Auditor-Appraiser. See id. at ¶ 3; Decl. of Richard Leong ("Leong Decl."), Docket Item No. 35, at ¶ 3.[3] Beginning in 2006, the evidence shows that Plaintiff was subject to the following instances of discipline before her termination on August 2, 2010:

- On January 13, 2006, Plaintiff was given a verbal counseling by Torio because the number of audits she had completed by that time - two audits - was insufficient in comparison to the total number of audits assigned to her. See Torio Decl., at ¶ 12; Ex. A. Torio also reassigned eight audits originally assigned to Plaintiff to other auditor-appraisers. Id.

- On January 27, 2006, Torio provided Plaintiff a mid-probationary performance appraisal noting that Plaintiff needed improvement in "quantity of work" and "work habits." Id. at ¶ 13; Ex. B.

- On April 5, 2006, Plaintiff was given another verbal counseling by Torio because Plaintiff was behind in her goal to complete five to six audits per month and still had 21 audits to complete before the end of the fiscal year. Id. at ¶ 14; Ex. C. Torio reassigned another seven audits and instructed Plaintiff to complete the remaining 14 audits by May 31, 2006. Id.

- On June 7, 2006, Plaintiff was given a written counseling by Torio because she did not timely complete the 14 assigned audits. Id. at ¶ 15; Ex. D. Torio instructed Plaintiff to complete the remaining audits by June 14, 2006. Id.

- On July 18, 2006, Plaintiff was given a second written counseling by Torio because many of her audits needed improvement before submission could be made to the taxpayer and one of the audits was not completed by the June 30th deadline, resulting in an assessment loss to Defendant. Id. at ¶ 16; Ex. E.

- On February 7, 2007, Plaintiff was given a third written counseling by Torio, again for failing to timely complete audits according to her workplan. Id. at ¶ 19; Ex. F. A third verbal counseling by Torio followed on May 9, 2008, for the same reason. Id. at ¶ 21; Ex. G.

- On December 10, 2008, and again on March 16, 2009, Torio issued to Plaintiff "Employee Unfavorable Reports," both of which explained Plaintiff's failure to complete audits according to the deadlines provided in her workplan. Id. at ¶¶ 22, 23; Exs. H, I. By March, 2009, Plaintiff carried the lightest workload in her unit. Id. at Ex. I.

- On October 26, 2009, Torio provided Plaintiff with a notice of forty-hour suspension from work for a continued failure to complete audits on a timely basis. Id. at ¶ 25; Ex. J.

- On December 3, 2009, Leong provided Plaintiff a performance evaluation noting that Plaintiff needed improvement in "quantity of work," "adaptability,"

[3] Plaintiff's evidentiary objections to the Leong Declaration are also OVERRULED.

United States District Court
For the Northern District of California

"communication," and "work habits." See Leong Decl., at ¶ 6; Ex. B. The "overall appraisal" was "improvement needed." Id.

- On February 25, 2010, Torio provided Plaintiff with a notice of three-week suspension for poor job performance. See Torio Decl., at ¶ 26; Ex. K.
- On July 8, 2010, Torio advised Plaintiff by letter that she recommended Plaintiff's termination. Id. at ¶ 27; Ex. L. Plaintiff was placed on administrative leave as a result, and was ultimately terminated after a Skelly[4] hearing on August 2, 2010. Id.

**D. Plaintiff's Discrimination Complaints**

Plaintiff made two discrimination complaints during her employment:

- On December 18, 2006, Plaintiff lodged a complaint with Defendant's Department of Equal Opportunity and Employee Development. See Patten Decl., at Ex. H. Plaintiff alleged that she was being treated differently by Torio because of her race/ancestry and gender. Id. On January 30, 2007, the investigator concluded that Plaintiff's allegations were not be sustained. Id.
- On November 12, 2009, Plaintiff submitted a charge against Defendant with the California Department of Fair Employment and Housing ("DFEH"). See Decl. of David Rollo ("Rollo Decl."), Docket Item No. 33, at Ex. D. As relevant here, Plaintiff alleged that she was subjected to differential treatment due to her race and disability. Id. On June 23, 2010, Plaintiff amended this charge to include her suspension and termination and requested that her charge be filed with the Equal Employment Opportunity Commission. Id.

Plaintiff alleges, and Defendant does not dispute, that the DFEH issued a right to sue letter on September 20, 2010, relating to the June 23rd amended charge, and another right to sue letter relating to Plaintiff's termination on July 19, 2011. This lawsuit followed on July 25, 2011.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The court must regard as

[4] See Skelly v. State Pers. Bd., 15 Cal. 3d 194 (1975).

United States District Court
For the Northern District of California

true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

Plaintiff asserts the following causes of action: (1) race discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940 et. seq., (2) retaliation in violation of FEHA, (3) retaliation in violation of the CFRA, (4) race discrimination in violation of 42 U.S.C. § 1981, (5) race discrimination in violation of 42 U.S.C. § 1983, and (6) retaliation in violation of 42 U.S.C. § 1983.[5] Since Defendant moves for summary judgment on all of these claims, each are discussed below.

### A. Race Discrimination

Defendant argues there is no issue of triable fact as to Plaintiff's first cause of action for race discrimination under FEHA.

FEHA makes it unlawful for an employer to discriminate against a person because of his or her race. Cal. Gov't Code § 12940(a). To examine such claims, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of

[5] Based on Plaintiff's representation in the opposition to this motion, her second, fourth, sixth and seventh causes of action will be dismissed.

discrimination . . . based on a theory of disparate treatment." Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000).[6] The first stage requires the plaintiff to state a prime face case. Id. at 355. "Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." Id.

If the plaintiff demonstrates a prima facie case, a presumption of discrimination arises and the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its conduct. Id. at 355-56. If defendant states such a reason, the burden then shifts back to plaintiff to show that the stated reason is a pretext for discrimination. Id.

**1. Prima Facie Case**

Plaintiff believes she can establish the elements of a prima face case of race discrimination because (1) she is Hispanic, (2) she experienced discipline, and (3) "similarly situated applicants, who are Asian and non-Puerto Rican, were not disciplined by decision makers of Filipino descent." In response, Defendant does not dispute the first two elements, both of which have support in the record. Instead, Defendant argues two other points.

**a. Satisfactory Job Performance**

Pointing to evidence that Plaintiff failed to submit audits on time from 2006 through her termination, Defendant first argues that Plaintiff's prima facie showing is incomplete because Plaintiff has not also proven that she was performing her job satisfactorily.

Defendant is correct that the prima facie showing required in a FEHA case is often stated to include satisfactory job performance as a requisite element. Indeed, one such formulation articulated by the California Supreme Court is cited above. Id. at 354. It is also true, however, that a showing of satisfactory job performance may not be such a strict requirement depending on the particular facts at issue. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n. 13 (1973) ("The facts necessarily will vary in [discrimination] cases, and the specification above of the prima

---

[6] The court also cites state and federal law interchangeably because, in the area of employment discrimination, "California courts look to pertinent federal precedent when applying [their] own statutes." Guz, 24 Cal.4th at 354.

United States District Court
For the Northern District of California

facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); see also Heard v. Lockheed Missiles & Space Co., 44 Cal. App. 4th 1735, 1750 (1996) ("The McDonnell Douglas model was never intended to be rigid, mechanized, or ritualistic. . . . The importance of McDonnell Douglas is not in its specification of the discrete elements of proof but is instead in its recognition that the [discrimination] plaintiff carries the initial burden of offering evidence *which creates an inference that an employment decision was based on an illegal discriminatory criterion*." (quotations and citations omitted, emphasis preserved)).

In the context of this case, requiring Plaintiff to prove satisfactory job performance at this stage is concerning because it restricts that element to a narrow definition unsuited to the circumstances. As noted, Defendant cites its own expectations of Plaintiff which it then contends Plaintiff consistently failed to achieve. But one of Plaintiff's central contentions is that these same expectations were in fact unachievable and not applied to others in her position or with her same skills. This contention is entirely plausible considering each auditor-appraiser's workplan is individualized and, as the evidence in this case demonstrates, subject to adjustment by a supervisor and "continually evolving." See Torio Decl., at ¶ 6 ("At the beginning of each fiscal year, every auditor-appraiser in the Assessor's Office is required to prepare an annual audit work plan setting forth deadlines to complete their assigned audits; ¶ 10 ("During the 2005 to 2006 fiscal year, [Plaintiff] was initially assigned 42 audits. Over the course of that fiscal year, I reduced her assignments to 27 audits based on her failure to complete her audits."); Patten Decl., at Ex. C, 65:9-12 ("Because work plan[s] are, like evolving, continually evolving.").[7]

The Courts of Appeals have also been concerned with this issue. Faced with a similar scenario, the Ninth Circuit rejected the approach advocated by Defendant, explaining that it "seems to conflate the minimal inference needed to establish a prima facie case with the specific, substantial showing" that must be made to demonstrate that Defendant's reasons for adverse action are pretext.

---

[7] It is for this reason - the individualized nature of the workplans - that the case cited by Defendant is inapposite. In Crawford v. MCI Worldcom Communications, Inc., 167 F. Supp. 2d 1128 (S.D. Cal. 2001), the plaintiff admitted that a particular standard stated in terms of a percentage was used to measure performance, and the evidence demonstrated that the plaintiff was not meeting that standard. Plaintiff has made no similar admission, and the evidence does not show that a comparable percentage-type standard applied to auditor-appraisers.

United States District Court
For the Northern District of California

Aragon v. Republic Silver State Disposal, 292 F.3d 654, 659 (9th Cir. 2002). Similarly, the Eighth Circuit has held that "by requiring plaintiff to disprove the alleged conduct violations in order to establish his prima facie case, the district court essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse employment action - in other words, to prove pretext and the ultimate issue of intentional discrimination." Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994). "The prima facie burden is not so onerous." Id.

At its extreme, forcing an employment-discrimination plaintiff to essentially prove pretext at the front end would allow employers to impose unreasonable amounts of work on an employee, terminate them for substandard performance, and then defeat the employee's discrimination case at the prima facie stage by simply arguing that the employee failed to perform at the aforementioned unreasonable level. All sorts of nefarious motivations would go unpunished if that were truly the law. Fortunately its not. As McDonnell Douglas, Aragon and Davenport make clear, the prima facie burden is meant to be a minimal one with elements that can be modified to fit the case. Aragon, 292 F.3d at 659; Davenport, 30 F.3d at 944 ("[T]he prima facie case in discrimination cases varies somewhat with the specific facts of each case . . . .").

Accordingly, the court has determined, based on *these* facts and *these* arguments, that Defendant's workplan metric is not a reasonable formulation of the job performance factor. Instead, the alternative definition is appropriate. Plaintiff must therefore show that she was qualified for her position as an auditor-appraiser. See Davenport, 30 F.3d at 944. This fact is undisputed. See Rollo Decl., Ex. B, at 73:18-74:22; Torio Decl., at ¶ 8. The court therefore finds that Plaintiff has met her burden on this element of the prima facie case.

**b. Disparate Treatment**

Defendant also argues that Plaintiff failed to show she was treated differently than other similarly-situated employees as part of her prima facie case. To that end, Defendant references incidents in the record which show "Plaintiff has an extensive history of failing to submit her audits, and she has not identified any other employees with a similar history."

The court disagrees. Contrary to what Defendant represents, Plaintiff has produced *some* evidence suggesting certain instances of disparate treatment. In that regard, the record demonstrates

Plaintiff was the only auditor-appraiser subjected to a mid-probationary review, and was the only auditor-appraiser disciplined by Torio in January through June, 2006, for failing to complete audits on a "flow basis," even though it appears other auditor-appraisers had a comparable amount of outstanding appraisals during that time. See Patten Decl., at Ex. C, 56:9-12, 100:15-101:15; Ex. G; Ex. I. Again, "[e]stablishing a prima facie case should not be such an onerous requirement." Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007); see also Guz, 24 Cal. 4th at 355. "The requisite degree of proof necessary to establish a prima facie case for [discrimination] claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). Because Plaintiff has submitted a minimal amount of evidence on this element, the court finds it satisfied. Plaintiff has therefore stated a prima facie case on her claim of race discrimination under FEHA.

**2. Nondiscriminatory Reason**

The burden now shifts to Defendant to "'clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)) (emphasis preserved); see also Guz, 24 Cal. 4th at 355-56.

Here, the admissible evidence submitted by Defendant demonstrates that its employment decisions concerning Plaintiff were the result of legitimate, nondiscriminatory motivations. On the issue of work assignments, Defendant's decision to assign Plaintiff 42 audits is supported by the extent of her prior professional auditing experience. See Rollo Decl., at Ex. B, 73:23-74:22; Patten Decl., at Ex. A. The evidence also shows that the amount of audits assigned to Plaintiff was within the range of audits assigned to other similar employees. See Torio Decl, at ¶ 10. These facts rebut Plaintiff's allegation that the amount of work assigned to her was motivated by her race.

As to the instances of discipline, the evidence shows that Plaintiff consistently failed to complete audits in a timely manner according to her individual workplan. This was true even after the number of audits assigned to Plaintiff was reduced and deadlines were extended by her supervisors. The evidence also shows that Plaintiff was ultimately terminated due to an unfavorable

United States District Court
For the Northern District of California

evaluation. Discipline and termination due to poor performance is not discriminatory. See Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985).

Because Defendant has produced evidence supporting legitimate, nondiscriminatory reasons for its conduct, the court finds that it satisfied its burden at this stage of the analysis.

**3. Pretext**

It is now Plaintiff's obligation to "offer substantial evidence that [Defendant's] stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." Hersant v. Dep't of Soc. Servs., 57 Cal. App. 4th 997, 1004-1005 (1997). When, as here, only circumstantial evidence of pretext is available, such evidence must be "specific" and "substantial." Wallis, 26 F.3d at 890; see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (holding that a plaintiff "must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing" of non-discriminatory purpose).

Plaintiff relies on circumstantial statistical evidence to show pretext, which she believes overwhelmingly shows disparate treatment. The court, however, disagrees that this evidence is sufficient to discharge Plaintiff's burden. As an initial matter, the documentation supporting Plaintiff's statistical interpretation, which is largely contained in Exhibit I to her attorney's declaration, is neither presented nor cited in a meaningful way such that the court can understand its impact on Plaintiff's case. Plaintiff has simply submitted a one and one-half inch stack of documents which she contends supports her argument for pretext. But most of this stack consists of a list of audits, the significance of which is unclear. "The district judge is not required to comb the record to find some reason to deny a motion for summary judgment." Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988). "A district court does not have a duty to search for evidence that would create a factual dispute." Bias v. Moynihan, 508 F.3d 1212, 1218-19 (9th Cir. 2007). The court cannot marshal Plaintiff's evidence for her.

In addition, Plaintiff did not adequately explain the conclusions her attorney draws from this documentation. In his declaration, Plaintiff's attorney states that a series of facts are "apparent"

United States District Court
For the Northern District of California

from Exhibit I. As already noted, however, there is not much that can be apparent from Exhibit I on its face, outside of the chart which lists the number of audits assigned and completed by each auditor-appraiser as of March 31, 2006. That chart does not contain obvious evidence of discrimination.

It also appears that many of Plaintiff's conclusions based on Exhibit I are insubstantial because they include comparisons of Plaintiff with other employees who are not similarly-situated. For example, Plaintiff compares her work pattern and deadlines to that of senior auditor-appraisers, but fails to account for the fact that employees in the senior position are expected to complete fewer, yet more complicated audits each year. See Reply Decl. of Christina Torio ("Torio Reply Decl."), Docket Item No. 45, at ¶ 7; Patten Decl., at Ex. B (auditor-appraiser positions are "distinguished from positions in the Senior Auditor-Appraiser class in that they are not assigned to the year round audit program and perform less difficult commercial and industrial audit-appraisal work."). Although it is true that similarly-situated employees need not be identical, they must be similar in all material aspects. Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010). Material similarity "is a fact-intensive inquiry, and what facts are material will vary depending on the case." Id. Here, the distinction in work requirements is a material *dissimilarity* between Plaintiff and senior auditor-appraisers because Plaintiff seeks to show discrimination through circumstantial evidence of differing works assignments. The evidence falls short of supporting disparate treatment if distinctions between employees can be explained by other, non-discriminatory reasons, such as different job expectations.

Moreover, Plaintiff's reliance on statistical information is insufficient to establish a triable issue of fact regarding pretext unless the statistics "'show a stark pattern of discrimination unexplainable on grounds other than'" race. Coleman v. Quaker Oats Co., 232 F.3d 1271 (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir. 1990)). The statistical evidence presented here fails to meet that standard because the differences in work patterns shown by the

Case5:11-cv-03645-EJD Document91 Filed09/30/13 Page12 of 14

United States District Court
For the Northern District of California

statistics can be explained by the individualized nature of each auditor-appraiser's workplan.[8]

Further, Plaintiff has not identified another comparable non-Hispanic employee who continuously failed to meet the expected workplan, and as already indicated, Plaintiff's own record of discipline is well-supported by documentation of her performance deficiencies.

For these reasons, the court finds that Plaintiff's evidence of pretext is insubstantial and her assertion of race discrimination is unsupported by sufficient evidence. She has therefore failed to meet her burden at this stage, and Defendant is entitled to summary judgment on Plaintiff's first cause of action.

**B. Retaliation**

Plaintiff's third and fifth causes of action are for retaliation. In the former, Plaintiff alleges retaliation after she made complaints of discrimination. See Cal. Gov't Code § 12940(h). In the latter, Plaintiff alleges retaliation after taking medical leave. See Cal. Gov't Code § 12945.2(l). Claims for retaliation under FEHA are subject to the same burden shifting analysis that governs discrimination claims. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). Plaintiff, therefore, must first establish a prima facie case before proceeding further. Id. "[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Id.

Here, Plaintiff cites the following facts in support of the first two elements of a prima facie case: Plaintiff filed a discrimination charge with the DFEH on November 16, 2009. She was then suspended for three weeks on February 25, 2010. She amended her DFEH charge on June 24, 2010. She was then terminated on July 8, 2010.

Assuming these facts satisfy the first two required elements, Plaintiff's showing on the third

---

[8] The same can be said of Plaintiff's allegation that she was given an unattainable amount of audits to complete. Contrary to Plaintiff's unsubstantiated argument, the evidence shows that she was assigned audits based on her experience within a range comparable to other auditor-appraisers. In addition, Plaintiff does not account for the fact that she still did not complete audits timely even when the number of audits assigned to her was reduced to a number at the low-end of the range of audits assigned to comparable employees.

12

CASE NO. 5:11-cv-03645 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

element fails to meet her burden. Plaintiff argues that a causal link between the DFEH charge and the adverse employment actions can be inferred based on the timing of these events. She relies on the proposition that "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002). But "if a plaintiff's causation arguments rest on the relative timing of his protected activity and his dismissal, the plaintiff must also clearly show that the defendant was aware of the protected activity when the adverse employment decision was made." Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1126 (E.D. Cal. 2006). Plaintiff points to no evidence which demonstrates that Defendant knew of her DFEH charge or the amended charge when it suspended her in February, 2010, and terminated her in July, 2010.

Furthermore, Plaintiff would not prevail even if the court proceeded to the pretext analysis. No matter how short the amount of time at issue, "there is no set time within which acts necessarily support an inference of retaliation." Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2002). "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing *and* the surrounding circumstances." Id. (emphasis added). The surrounding circumstances in this case include Plaintiff's deficient work performance and the numerous verbal and written counseling sessions that occurred prior to November, 2009. Those facts significantly weaken any inference that can arise from timing alone. See Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 354 (2008) ("An employee, fearing that his job is on the line, may not raise an old wound as a preemptive strike to escape appropriate discipline or discharge."). Plaintiff seeks to ignore that evidence by relying on the timing between her charge and the last two adverse employment actions, and the court has already explained why her other evidence is insufficient to establish pretext.

Because Plaintiff did not establish a prima facie case of retaliation and cannot show pretext in any event, Defendant is entitled to summary judgment on the third and fifth causes of action.[9]

---

[9] Since Plaintiff offered no argument concerning her fifth cause of action, Defendant's Motion is unopposed as to the claim of retaliation for taking medical leave. Accordingly, Defendant is entitled to summary judgment on that claim because it has met its burden to show there is no dispute of material fact that its conduct was not retaliatory. See Cristobal v. Siegel, 26 F.3d 1488,

United States District Court
For the Northern District of California

**C. 42 U.S.C. §§ 1981 and 1983**

Plaintiff's eighth, ninth and tenth causes of action arise under 42 U.S.C. §§ 1981 and 1983. To the extent these claims do not fall due to the deficiencies of her direct FEHA claims for racial discrimination and retaliation (see Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 754 (9th Cir. 2001)), they nonetheless fail because Plaintiff has not provided any evidence which shows that the adverse conduct she complains of was the result of Defendant's policy or custom or that her supervisors, or any of the still unidentified "doe" defendants, were final policymakers. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1215 (9th Cir. 1996). Such an evidentiary showing is required for these claims to survive summary judgment because liability for constitutional violations "may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Ulrich v. City and County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002) (quoting Monell, 436 U.S. at 694 (1978)). Without such evidence, Defendant is entitled to summary judgment on these claims.

## IV. CONCLUSION AND ORDER

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's first, third, fifth, eighth, ninth and tenth causes of action. The second, fourth, sixth, and seventh causes of action are DISMISSED.

Since this results in a final resolution of this action, judgment will be entered in favor of Defendant. All other matters and hearing dates are TERMINATED and VACATED. The clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 30, 2013

EDWARD J. DAVILA
United States District Judge

---

1491 (9th Cir. 1994).